## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO.: |
| RICHARD BRUNO in his official and individual capacity, DOMCO, LLC and DOMCO II, LLC. | ) |
| | ) February 25, 2019 |
| Defendants. | ) |

## **COMPLAINT**

### **INTRODUCTION**

The United States of America alleges as follows:

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601, *et seq.* ("Fair Housing Act").

2. From at least 2011, until his arrest and incarceration in 2016, Richard Bruno ("Bruno") engaged in a pattern or practice of sexual harassment against numerous prospective and current tenants and their minor children.

3. From 2011-2016, Bruno served as the agent, co-owner, business partner, and/or property manager for several properties owned and/or co-owned by one or more of the following: Bruno's former wife, Kem Curtin, formerly Kem Bruno ("Curtin"); defendant Domco, LLC ("Domco"); and defendant Domco II, LLC ("Domco II").

1

4. While serving as an agent and property manager for Domco, and as a co-owner of Domco II, Bruno sexually harassed current and prospective tenants and their minor children. That harassment included both quid pro quo sexual harassment and the creation of a hostile living environment for his prospective and current tenants.

5. When tenants resisted Bruno's advances and reported the sexual harassment, Bruno often retaliated against the tenants by denying rental benefits to tenants and evicting or threatening to evict them.

6. Based on the discriminatory actions of Bruno, Domco, and Domco II (collectively referred to as the "Defendants"), the United States seeks declaratory and injunctive relief, as well as monetary damages and civil penalties.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, 2201, and 2202, and 42 U.S.C. § 3614(a).

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the District of Connecticut, and the Defendants reside or do business in the District of Connecticut.

## FACTUAL ALLEGATIONS

### PARTIES

9. Defendant Bruno, is a former resident of Waterford, Connecticut. Since 2017, he has been incarcerated at the Federal Correctional Institute at Otisville, in Otisville, New York.

10. On May 8, 2017, Bruno pleaded guilty and was sentenced on September 28, 2017 to sixteen years in federal prison in the United States District Court for the District of Connecticut for producing child pornography in one of the properties owned by defendant Domco II, with one of the minors who resided in one of properties owned by defendant Domco.

11. Defendant Bruno was married to Curtin from November 1997 to August 2017.

12. On November 29, 2001, Curtin founded Domco, and was its sole member and/or principal from its inception until about October 12, 2017.

13. Domco is a Connecticut limited liability company with its current principal place of business at 35 Ridgeview Circle, New London, CT 06320.

14. Bruno was an agent and/or employee of Domco from at least 2001 to 2017.

15. On December 10, 2014, Curtin and Bruno founded and became co-owners of Domco II.

16. Domco II was a Connecticut limited liability company with its principal place of business at 13 Lower Blvd., New London, CT 06320.

17. Bruno was also the co-owner, manager, and registered agent of Domco II from 2014 until 2017.

## PROPERTIES AND OWNERSHIP

18. Since about 2001 to the present, Curtin and Bruno have owned and/or managed approximately sixteen properties in New London, Connecticut (collectively, "the Subject Properties") primarily through Domco and Domco II. Approximately fourteen of the Subject Properties are residential rental properties.

19. These Subject Properties are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

20. The properties owned by Curtin, Domco and/or Domco II include: a townhouse, a single-family home, multi-family housing, a parcel of land, and a commercial building, as detailed below.

21. Curtin was the owner or co-owner of seven of the Subject Properties in her individual capacity until about September 11, 2017 (hereinafter collectively referred to as the "Curtin Owned Properties").

22. Domco owned and managed at least fourteen of the Subject Properties, at different times, from 2001-2017 (hereinafter collectively referred to as the "Domco Properties"), and entered into leases with tenants to rent units in the Subject Properties during that time period.

23. Domco II owned eight of the Subject Properties from 2014-2017 (hereinafter collectively referred to as the "Domco II Properties") and entered into leases with tenants to rent units in the Subject Properties during that time period.

24. Bruno entered into leases with tenants on behalf of Domco from at least 2012 to 2017 for properties owned by Curtin, Domco and/or Domco II.

25. On August 18, 2017, Curtin and Bruno divorced and their assets were separated.

26. On September 5, 2017, Curtin and Bruno merged Domco and Domco II, under the name of Domco.

27. On October 12, 2017, Curtin transferred Domco to Bruno.

28. Pursuant to the divorce decree, Bruno obtained ownership of six rental properties and one commercial property, which were placed under the name of Domco (hereinafter "Bruno Properties").

29. The Bruno Properties, currently owned under the name of Domco, are managed by Bruno's property manager, Thomas McNally.

30. On July 12, 2017, Curtin established Domenico, LLC, which is a limited liability company.

31. Curtin is the sole owner of Domenico.

32. Domenico owns and manages all eight of the properties Curtin received pursuant to her divorce from Bruno.

33. Prior to September 2017, Defendant Bruno collected and processed checks and cash payments for residential rental real estate properties owned or managed, in whole or in part, by Curtin and by Defendants Domco and Domco II, including the Domco Properties, Domco II Properties, and Curtin Owned Properties.

34. Curtin and Defendant Bruno have intentionally operated their residential

5

property rental and management business partnership through Defendants Domco and Domco II.

35. Defendant Bruno has managed the Subject Properties and management business partnership, including Defendants Domco and Domco II, by signing rental leases, opening and maintaining post office boxes to collect rental checks, and processing checks and rental payments.

36. Defendant Bruno acted as an agent for Defendants Domco, and Domco II, in that he showed housing units to prospective tenants, negotiated rental leases, interacted with tenants, collected rent from tenants, and processed checks and rental payments for the Domco Properties, Domco II Properties, and Curtin Owned Properties.

37. Defendant Bruno has performed the activities described in paragraphs 33-36, and he has done so in the name of Defendants Domco and/or Domco II, at times relevant to this action.

38. By undertaking the actions described in paragraphs 33-36, Defendant Bruno has contributed his own property, resources, effort, skill, and knowledge to the Defendants.

39. Defendant Bruno has shared in the profits and losses of Defendants Domco and Domco II.

40. Defendant Domco knew or should have known of Bruno's discriminatory housing practices, had the authority to take preventive and corrective action, and failed to take reasonable preventive or corrective measures to prevent or redress Bruno's conduct.

41. Defendant Domco II knew or should have known of Bruno's discriminatory housing practices, had the authority to take preventive and corrective action, and failed to take reasonable preventive or corrective measures to prevent or redress Bruno's conduct.

42. Bruno engaged in sexual harassment of women and/or girls at one or more rental

properties that, at the time, were owned or co-owned by Curtin.

43. Bruno engaged in sexual harassment of women and/or girls at one or more rental properties that, at the time, were owned or co-owned by Domco. When Bruno engaged in this sexual harassment he was acting as the employee and/or agent for Domco at those rental properties.

44. Bruno engaged in sexual harassment of women and/or girls at one or more rental properties that, at the time, were owned or co-owned by Domco II. When Bruno engaged in this sexual harassment he was acting as the employee and/or agent for Domco II at those rental properties.

## SEXUAL HARASSMENT

45. From approximately 2011 through 2016, Defendant Bruno subjected prospective and current female tenants of the Defendants' Subject Properties to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but is not limited to:

   a. Making sexually explicit comments to, and in front of, current and/or prospective tenants in the Subject Properties.

   b. Making unwelcomed sexual comments and advances to current and/or prospective female tenants and their minor female children in the Subject Properties;

   c. Offering, requesting, and coercing female tenants to exchange sex and sexual acts for reduced rent at the Subject Properties;

   d. Grabbing, groping, humping, and rubbing the bodies of female tenants and their minor female children living in the Subject Properties, or attempting to grab, grope, hump and rub their bodies;

e. Asking to take pictures or videos of the bodies of tenants and/or their minor female children;

f. Taking or collecting naked pictures and audiovisual recordings of tenants and their minor female children living in the Subject Properties;

g. Asking to touch and/or touching female tenants and their minor female children living in the Subject Properties;

h. Sending unsolicited text messages and social media messages to female tenants and their minor female children living in the Subject Properties;

i. Establishing and maintaining "dungeons" or "sex rooms" in the Subject Properties, and showing them to tenants;

j. Forcing tenants and their minor female children to view sexual paraphernalia, "dungeons" and "sex rooms" at the Subject Properties.

k. Making frequent and/or repeated unannounced visits to female tenants' homes at the Subject Properties to conduct and further his sexual advances;

l. Entering the homes of female tenants living in the Subject Properties without their consent and searching female tenants' personal effects without their knowledge or consent;

m. Menacing female tenants of the Subject Properties by repeatedly driving by their homes, knocking on their doors, and entering their homes when he had no legitimate reason;

n. Retaliating against tenants living in the Subject Properties for filing complaints or refusing advances, by taking adverse housing action, such as eviction, refusing to allow pets, and threatening to take such action against female tenants who objected to and/or refused sexual advances.

8

46. For example, on multiple occasions in 2016, Bruno forced a tenant, who lived in a Subject Property and was unable to pay the full amount of rent due, to engage in oral sex with him for a reduction in rent.

47. In May 2016, Bruno forced a prospective tenant to view a sex room he maintained at one commercial property owned by Domco II when she went to sign her lease.

48. In May 2016, a female tenant living in a Subject Property filed a police report because Bruno entered her apartment without her permission, when she was not home, and went through her personal effects. Bruno had been also making sexual advances towards the tenant.

49. In October 2015, after a tenant refused Bruno's sexual advances and refused to find "some young sexy slim girls" for him, Bruno forced his way into the tenant's apartment, rubbed, groped, and humped the tenant's minor daughter's body, telling the minor that she "looked like her mother." When the tenant found out, she filed a child sexual molestation complaint against Bruno with the local police department. Shortly thereafter, Bruno commenced eviction proceedings and evicted the tenant and her family from one of the Subject Properties.

50. In 2014, Bruno shoved his genitals in the face of a tenant while she was viewing an apartment in one of the Subject Properties. On previous occasions, Bruno had informed the tenant that "there are other ways to pay rent."

51. In 2013, Bruno threatened a family living in a Subject Property with eviction, and forced the family to get rid of their family dog, after the tenant's teenaged daughter rejected Bruno's sexual advances and refused to allow Bruno to photograph her toes.

52. Between 2010 and 2011, Bruno hired a tenant's minor teenaged daughter to clean apartments for him at one of the Subject Properties, and demanded that the minor wear a white

9

shirt so he could see her bra. Bruno also offered to pay the minor for sex on multiple occasions.

53. Several tenants who resided in the Domco Properties, Domco II Properties, and Curtin Owned Properties, between at least 2011 and 2016, were exposed to "dungeons" or "sex rooms" Bruno maintained and showed to them at the Subject Properties. The rooms contained naked pictures of women on the wall, mattresses on the floor, hooks on the ceiling, ropes, and/or a set up for a camera.

54. The experiences described above were not isolated instances, but a longstanding pattern or practice of illegal sexual harassment of numerous tenants or prospective tenants and their minor children.

55. Defendants Domco and Domco II are liable for the above-described discriminatory conduct of their member, agent, manager, and co-owner, Bruno, which occurred within the scope of his partnership, agency, employment and/or joint ownership.

56. The harassment described above occurred at the Subject Properties, including the Domco Properties, Domco II Properties, and Curtin Owned Properties.

57. The above-described actions and conduct of Defendant Bruno caused tenants and their minor children living at the Subject Properties to suffer physical harm, fear, anxiety, and emotional distress, and inhibited their ability to secure housing for themselves and their families.

**CAUSE OF ACTION**

58. By the actions and statements described above, the Defendants have:

    a. Denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental or sale of dwellings, or in the provision of services or facilities in connection therewith,

because of sex, in violation of 42 U.S.C. § 3604(b);

  c. Made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c);

  d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

59. The Defendants' conduct constitutes:

  a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*; and

  b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, where such denial raises an issue of general public importance.

60. Tenants and prospective tenants, and their minor children, have been injured by the Defendants' discriminatory conduct. These persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i), and have suffered damages as a result of the Defendants' conduct.

61. The Defendants' conduct was intentional, willful, and taken in reckless disregard of the rights of others.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter an Order that:

  a. Declares that the Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*;

  b. Enjoins the Defendants, their agents, employees, and successors, and all

other persons in the active concert or participation with them from:

    i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental or sale of a dwelling;

    ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

    iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendants' unlawful practices;

c. Awards monetary damages to each person aggrieved by the Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against the Defendants to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

e. Awards such additional relief as the interests of justice may require.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

WILLIAM BARR
Attorney General

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

JOHN H. DURHAM
UNITED STATES ATTORNEY

_____/s/_____

JOHN B. HUGHES (ct05289)
Chief, Civil Division
Assistant U.S. Attorney
157 Church Street
New Haven, CT 06510
(203) 821-3700
John.Hughes2@usdoj.gov

_____/s/_____

Ndidi N. Moses (ct27456)
Assistant U.S. Attorney

1000 Lafayette Blvd. 10th Floor
Bridgeport, CT 06604
(203)696-3000
Ndidi.Moses@usdoj.gov